I'm William Dewey, I represent Mr. Suesue, and I'd like to reserve five minutes for rebuttal. Certainly. This is a case where an unusual thing happened. A 29-year-old man facing very serious charges and facing an almost certain sentence of 30 years, according to his first attorney, was offered a plea agreement of 17 1⁄2 years, 12 1⁄2 years, shy of 30 years. I should tell you, we have read the briefs, so I would love you to get to the question of how can we have jurisdiction in this case when the notice of appeal was filed more than 60 days after the entry of judgment? Because the Rule 11, which takes precedent over all civil rules, if it's in contradiction, follows a statute, and the statute 2253 specifically states that you may not appeal except from a final order. A final order is defined in the Rule 11 of the rules governing 2255s as an order that must contain a ruling on the certificate of appealability. Don't you usually have two separate documents? Isn't that your experience at least? Didn't your research reveal that? Yes. Usually you have two separate documents, but in this case we only had one document, and we never got the other separate document. So when you go to Appellate Rule 4, the definition of what a ruling would be, a judgment would be, or an order is the words of Rule 4a that in defining what a judgment is, it requires both documents. Do you say we find that at what point, that it requires both documents? In Rule 4 of the Appellate Rules, entry defined in Section A, and it would be A7, entry defined a judgment is entered for purposes of Rule 4 if a judgment of order is set forth in a separate document. I think the question, counsel, is whether Rule 11 alters the time requirements for appeal that's set out in Rule 4, and I don't see any authority for that. Rule 11 requires a timely notice of appeal, which is separate from the certificate of appealability issue, isn't it? Do you have any authority to support the proposition that Rule 11 somehow alters Rule 4's timing requirement for purposes of appeal? Yes. And what authority is that? The authority is in the statute. That is, if there's a jurisdictional bar, the statute must meet the statute because Congress decides that. And when Congress decides that, Congress has decided that you must have an order on a certificate of appealability to be able to file an appeal. Now, that has been interpreted by numerous circuits in different ways, but when you have a separate document that needs to be filed before you can file an appeal, and the statute itself... The statutory provision, Rule 11, and Rule 81 of the civil rules says that anything that contradicts the civil rules would require that in there. And in terms of the final order, you can only appeal from a final order under the statute. You can only have a final order if it contains a ruling on the certificate of appealability. In fact, the words are must. It's rather unusual. Usually it's shall or may, but it's must in Rule 11. The other thing is the reason that it hasn't been decided is because it's an area of confusion that hasn't come to the courts before, but it's an area of confusion as to... Could it be because it's an error that's so clear that nobody's made the argument you're making before? Well, that is certainly possible. I don't think it was an error. I think that we were not allowed under the statute to file an appeal until we had a final order. The final order, all the case law in regard to that was before Rule 11 was promulgated. That is, Rule 11 became Rule 11, and Rule 11 previous became Rule 12 in the rules dealing with habeas. So that if we have a final order that must contain, we simply ask that the trial court rule. And that's the normal way it works in terms of Rule 22 in the appellate rules as well. The appellate rules contemplate that the trial court must rule on the certificate of appealability before the appeal is done. The authority in terms of the comments on the rule, the comments on the rule are fairly clear that this was required to determine when the time to appeal should be. If you have a rule that's called certificate of appealability, time to appeal, and a requirement that the final order must contain, and the statute that says it must contain, you can only appeal from a final order, then the authority is the Congress, the United States. And a jurisdictional, the jurisdiction. I think we understand your argument with regard to jurisdiction. I know you wanted to save a little bit of time. Do you want to take a minute or so to talk about the merits of the case? Yes. What I would like to talk about is a little bit, and I'll try to do it quickly if I can. Is that the court's ruling, that is Judge Roberts' ruling on the merits of the issue, simply say that it wasn't Mr. Coe's, he's the second attorney, Mr. Coe's responsibility to look at the defenses, not to advise on the defenses. But I must remind the court, the court also said that there was no evidence supporting that he ever requested that. The ruling was internally inconsistent. He ruled that Mr. Sui Sui never asked Mr. Coe to investigate any potential defense, and then he also stated at another page, on page 17 of his opinion, that's the excerpt of records at 2930, that he talked to Mr. Sui Sui to ascertain if he wanted to proceed with a motion. He gave him no advice in regard to the defenses, even though it's fairly, I think, fairly clear on the record that when the prosecutor and his first attorney, who had told him before the sentencing that he had no defenses, talked about him having a great defense to the charge when trying to basically sell the plea to the court. The prosecutor also said that this wasn't a robbery. He had just pled to a robbery. Now, in terms of whether he was a voluntary, would he voluntarily have gone back to that had he gotten advice, the same advice from Mr. Coe as he had from Ms. Tatter, it must be reminded that Ms. Tatter was being accused by Mr. Coe at the time of ineffective assistance of counsel. So Mr. Coe, when he relied on Ms. Tatter's advice in regard to defenses, he was basically relying on two sets of advice. One, you don't have any defenses and you'll surely get 30 years. It would be suicide for you not to take this deal. And then the advice that he got during the sentencing hearing that he had great defenses. He had a defense to many of the charges and the prosecutor himself saying that it wasn't a robbery and he had pled to a robbery. So you're taking, the second attorney is taking the position of relying on the first attorney whose credibility has been destroyed by her own comments and the prosecutor at sentencing. Now, a second attorney who comes in and says, no, I've looked at the facts, and the record's fairly clear. Mr. Coe didn't look at the facts. He didn't do the discovery. He didn't review the discovery. He didn't give any advice on that issue. And when you look at the law, I cited to a case. Counsel, do you wish to save time for me? Yes, I think I'll save the time. You only have a minute left. Unless you have another question. No, thank you. Thank you. Good morning, Your Honor. May it please the Court. My name is Kevin Feldes, and I represent the United States, and I was trial counsel in this matter as well, although I was not the trial counsel at the time of the proposed change of plea when Mr. Suey Suey decided to, instead of going forward with the plea agreement, withdraw his plea and proceed to trial. Well, my question is, what should we make of the fact that the district court considered Petitioner's motion to amend the judgment on the merits? Why doesn't that give us jurisdiction on this appeal? Well, I think looking at the authority of Tinsley v. Borg, which we cited in the 28J letter, I think the court has discretion here if the court chooses to find jurisdiction. And the discretion would be, according to that authority, to treat that 59E and 60 motion, which did make a request for a certificate of appealability, and to treat that as a notice of appeal. I think the court has discretion to do that. I think in this case. And in the case that you cite for that purpose. Is Tinsley v. Borg, and it's a Ninth Circuit decision from 1990. It has not, as far as I know, been relied upon since that time, but we did find that decision recently.  It's in the Ninth Circuit, 895. Sadler. This is Tinsley v. Borg, and we've cited it in a 28J letter. And it makes reference to the fact, in that decision, the court treated a request for a certificate of probable cause as a notice of appeal in that case. It's within the court's discretion. I do not believe it would be appropriate here to exercise that discretion for a number of reasons, including that, number one, the defendant has never made that argument before the court, not in the briefs or here today. Number two, it is clear that his 59E and 60 motion were not intended to be a notice of appeal. He's never intended that to be the case. And I think what this prior case discusses is, if we have a pro se defendant who, you know, is not articulate in trying to express his notice of appeal, the court has discretion to find a request for a certificate of appealability as a notice of appeal. But in this case, I don't believe that's appropriate. He hasn't raised it. He didn't intend it to be. In fact, his argument and the one he repeated today is simply not the law. It's an incorrect interpretation of the law, and I think the case law is pretty clear that his Rule 11 argument does not apply.  Turning to the merits of the case, you know, this is a case where Mr. Tsui Tsui made his decision. He was fully advised, and he did what the law allows him to do. He ultimately had to make a decision about whether to go forward with a plea and a plea agreement or to go to trial. What case supports your argument that Mr. Koh could rely on the research of Ms. Tatter? Well, I think what the question is, and I would point to Titlow, the most recent discussion of the ineffective assistance counsel claims related to changes of plea and plea agreements. And what Titlow tells us is there has to be evidence in the record that the defense counsel gave incorrect legal advice or omitted something so drastic that it amounted to the same thing. That's what we would need to find in order to find ineffective assistance of counsel here. We have just the opposite. Mr. Tsui Tsui had excellent advice from two attorneys. He was told it would be suicide to withdraw his plea. He rejected Mrs. Tatter's advice. Decided even before that hearing, when he was supposed to be sentenced, he decided even before that time that he could not go forward and accept a 17-year plea agreement. And he told the court at that hearing, in fact, he wrote a letter to the court before the hearing saying he didn't want to go through with this. He asked for new counsel claiming that Mrs. Tatter had been ineffective because she had advised him to go forward with the plea agreement. He claimed she was ineffective for that reason, and he wanted a new attorney. Mr. Koh, a very experienced counsel, met with him eight different times. The record is clear on that. He advised him that he could face substantially more time, including the career offender provision, if he went to trial and lost. He reconfirmed Mr. Tsui Tsui's desire to withdraw his plea despite those risks and go to trial. That does not come anywhere near the standard of ineffective assistance that would need to be shown here. Going a step further to the prejudice element, we see that the district court found it was simply not credible for Mr. Tsui Tsui to claim that he was relying on Mr. Koh to make the decision about whether to withdraw his plea. And so we have a finding of the district court, essentially, that no matter what anybody had said to Mr. Tsui Tsui, he had made up his mind about how he wanted to proceed despite the risks. And under both prongs, whether it was actually ineffective or whether there was any prejudice, there's absolutely no showing. In fact, just the reverse here. Mr. Tsui Tsui knew the risks, and he was unwilling to accept them. My claim is that not that he didn't realize the risk of going to trial so much. I think he knew at the time that he wanted to withdraw his plea that the consequence of a conviction would be substantially more time because a 17-year deal is a substantial reduction from the exposure. He got a great deal, and he got cold feet. And he got cold feet because during the hearing, he heard indications that there are good potential defenses. And so as I look at the claim that's on appeal before us now, it's really focused on the fact that the second attorney, Mr. Koh, didn't research the defenses adequately. It's like, wait a minute, I'm in court. I'm hearing that there's some great potential defenses here. Now I'm feeling shaky with Ms. Chatters. Maybe she didn't tell me about the defenses sufficiently. So I want a new attorney to tell me what those defenses are. That's how I see his claim. Look, I got a new attorney, but he focused all of his efforts on the withdrawal of the plea motion, and he didn't adequately research the potential defenses I had and discuss that with me. So how do you respond to that claim? If I may, in two regards. Number one, I think it's a bit disingenuous for Mr. Suisui to say that it was at that hearing when he got cold feet because he heard something from either his own attorney or from the prosecutor. And the reason I say it's a little disingenuous is because prior to that hearing, he wrote a letter to Judge Burgess, and Judge Burgess provided to Ms. Tatter. And in that letter, as Mr. Suisui stated later in an affidavit, he expressed his desire to withdraw his plea, that the 17 years was just too long, he couldn't go through with it. That was before he heard anything from counsel at that hearing. He was already expressing his desire that he couldn't go through with his plea agreement and with his guilty plea. Ms. Tatter talked to him about that, kept trying to convince him otherwise, but he really was dead set on the fact that he was not going to go through. So he didn't come to that hearing intending to go through with his change of plea and sentencing. He really came in there with the cold feet that you discussed earlier. Secondly, during the hearing, there were statements made about possible defenses. But Ms. Tatter testified at the 2255 hearing, all those statements were factually correct. There were risks on the government side, and there were risks that why a plea agreement might have been appropriate even for the government at that time. Trials are risky business. There were defenses that could be raised. Mr. Suisui was convinced that the phrase when he said to the agent, I'm going to smoke you, that that wasn't clearly an intended threat. The jury found otherwise. So the things that were said on the record were factually correct, and Ms. Tatter testified to that at the 2255 hearing. How do you define the issue, the precise issue that's before us for decision today? The issue is, was Mr. Koh ineffective by failing to convince Mr. Suisui to go forward with the plea agreement even despite his own desire to withdraw from the plea? Really, that's what's before us. Is the standard that the defense attorney has such an obligation, he essentially has to force his client to make a decision against the client's wishes? Mr. Suisui was fully informed. He just had cold feet, couldn't accept the reality of the situation, and as Ms. Tatter has testified, she's seen that before. He's not alone in that fact, but the law simply doesn't require a defense attorney to force his client to plead guilty under those circumstances. Counsel, let me ask you this. If we find no jurisdiction, we don't need to reach that issue, is that correct? That's correct. Thank you, counsel. Thank you. Thank you. When Mr. Koh was appointed, he was appointed to determine whether a motion to withdraw a plea should be granted or should be filed. In Titlow, there's a concurring opinion by Justice Sotomayor that says counsel must make an independent examination of the facts, circumstances, pleadings, laws involved, and offer an informed opinion as to what the plea should be entered. I just heard the prosecutor argue again the findings of the trial court that Mr. Koh was left to make a decision, and that was clearly not true. Well, it's not true because that's not what Mr. Suisui put in his affidavit. He stated that he asked Mr. Koh about the facts in his defenses. It's on paragraph 5 of his affidavit on page 45 of the record on appeal. That statement itself was a statement that he asked Mr. Koh, and Mr. Koh's response was, you know the facts better than I do. I just got in the case. You'll have to make the decision on your defenses, and you'll have to make the decision on the facts. We're familiar with the record, counsel. You're actually over time, and I think we have your arguments well in hand, but I thank the parties for your argument in this case today. The matter is submitted for decision by this court. All right, the next matter, U.S. v. Grant 13-30106, has been submitted on the briefs. As has United States v. Lamar Joseph Fassin. And so we'll call the next case on the calendar for argument, and that's Fred Alito, Tombaga v. United States, 12-35852. Thank you. Mr. Flanagan? Are you ready? Can I jog you? Oh, come over here.
judges: FARRIS, NELSON, NGUYEN